AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| JAAPHAR ABDUL-HAMID | ) |
| | ) |
| _Plaintiff_ | ) |
| | ) |
| v. | ) |
| THE CITY OF NEW YORK, and POLICE OFFICER | ) |
| JOHN/AND/OR JANE DOE NUMBERS 1-10 | ) |
| | ) |
| _Defendant_ | ) |

**13 CV 0325**

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  THE CITY OF NEW YORK
THE LAW DEPARTMENT
CORPORATION COUNSEL
100 CHURCH STREET
4TH FLOOR
NEW YORK, NY 10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  RONALD PAUL HART, ESQ.
RONALD PAUL HART, P.C.
225 BROADWAY, SUITE 2515
NEW YORK, NY 10007

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

_CLERK OF COURT_

Date:  JAN 1 5 2013                                _____
_Signature of Clerk or Deputy Clerk_

2013 JAN 15 PM 3: 12
OFFICE OF CORP. COUNSEL
CITY OF N.Y. LAW DEPT.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

**JAAPHAR ABDUL-HAMID**

Plaintiff,

Index No:

-against-

**COMPLAINT**

**THE CITY OF NEW YORK,
AND POLICE OFFICER JOHN AND/OR
JANE DOE NUMBERS 1-10**

Defendants.

_____X

**NOW COMES** the Plaintiff, **JAAPHAR ABDUL-HAMID,** by and through his

attorney, **RONALD Paul HART, P.C.,** as and for his complaint against the Defendants, and

respectfully shows to this Court and allege as follows:

**PARTIES:**

1)      That the Plaintiff,  **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") is

presently a resident of the city of New York, in the State of New York.

2)      At the time of the incident, the Plaintiff was a resident of the City and State of

New York and County of New York.

3)      Upon information and belief, that at all times, hereinafter mentioned, the

Defendant, **THE CITY OF NEW YORK,** was and still is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

4)      Upon information and belief, that at all times, hereinafter mentioned, the

Defendant, **THE CITY OF NEW YORK,** its agents, servants and employees operated,

1



maintained and controlled the Police Department of The City of New York, and all the police officers thereof, including defendant Police Officers **JOHN/JANE DOES 1-10.**

5)      Upon information and belief, at all times hereinafter mentioned, and on or prior to April 11 2011, Defendants, Police Officers **JOHN/JANE DOES 1-10**, were employed by

6)      This action arises both under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments to the Constitution of the united states, and under federal law, particularly the Civil Rights Acts, Title 42 of the United Code, Section 1983, et seq. and state law for malicious prosecution, abuse of process, negligent infliction of emotional distress, negligent hiring, training, and supervision of police officers, permitting unlawful police practices, and racial discrimination, to name a few of the causes of action.

7)      This action also arises under and the rights under the Constitution and laws of the State of New York.

8)      Each and all of the acts of the Defendants alleged herein were done by the defendants, their agents, servants and employees, and each of them, as individuals and in their official capacities as police officers under the color and pretense State law, the statuses, ordinances, regulations, customs and usages of the State of New York, the **CITY OF NEW YORK** and the County of new York, and under the authority of their office as police officers of said state, City and County.

9)      The amount in controversy is $75,000 exclusive interest.

**PENDANT STATE CLAIMS:**

10)      That Notice of Plaintiff's Claim for Damages for False arrest, violation of Civil rights, negligence in hiring and retaining, negligence in performance and negligence in training and supervising, the nature of the claim and the date of, the time when, the place where and the

manner in which the claim arose was duly served upon the Comptroller Defendant **THE CITY OF NEW YORK** on the 1st day of June 2012.

11)     That more than 30 days have elapsed since the Notice of Claim has been served upon Defendants **CITY OF NEW YORK** and other defendants and said Defendants have neglected to or refused to make any adjustments or payment thereof; hence, this action is commenced within one year and 90 days after the cause of action arose.

<u>**AS AND FOR FIRST CAUSE OF ACTION**</u>
<u>**ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID**</u>
<u>**FALSE ARREST AND FALSE IMPRISONMENT:**</u>

12)     The Plaintiff,  **JAAPHAR ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-13 of this Summons and Complaint as though fully plead and re-alleged in their entirety below.

13)     That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street and East 17th Street in Manhattan.

14)     Plaintiff  switched his off duty light to on because he was headed to the garage in Brooklyn for an oil change after he dropped off his current passenger.

15)     When Plaintiff arrived to the customer's destination; E17th Street and 5th Ave, and was preparing to stop, two intoxicated women started to run toward his car.

16)     While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

17)     Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

18)     As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

19)     The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before  the receipt was printed.

20)     Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

21)     The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

22)     Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

23)     The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom".  As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

24)     Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

25) Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

4

26)      Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient.  They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

27) They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

28)      They eventually were able to hit the phone causing it to fall down from his hand.

29)   After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

30) Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

31)      While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

32) She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

33)      After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

5

34)     So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

35)     Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

36)     Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

37) The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

38) Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

39)     Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "***If you insist I will lock you up!***", and he walked away.

40)     Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

41) The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

42)     Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

43) He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

44)     He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

45)   The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

46) Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

47)     Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

48) But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

49) Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

50) The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him

7

to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

51) The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

52) Plaintiff told the Police Officer, "That this was not true".

53) The Police Officer responded, "shut up, you will go to jail, ok"!

54) They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

55) When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

56) Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

57) Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

58) Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

59) On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

8

60)      That the Defendants, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees.

61)      That Defendant, their agents, servants and employees in their failure to hire, train, supervise and discipline or in any other way control the Defendants in their exercise of their functions to enforce the law of the state and **CITY OF NEW YORK**, did act willfully, wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, the Plaintiff.

62)      That the Defendant, **THE CITY OF NEW YORK,** was careless and reckless in hiring and retaining as and for its employees, the above named individuals **DEFENDANTS** Police Officers **JOHN/JANE DOES 1-10,** in that the said Defendants lacked the experience deportment and ability to be employed by the Defendant; in that the Defendant failed to exercise due care and caution in its hiring practices, and in particular, in hiring the Defendant employee who lacked the mental capacity and the ability to function as an employee of the aforementioned Defendant; in that Defendant's background and in that they hired and retained as an employee of their police department individuals whose backgrounds contained information (based information and belief) that revealed said Defendants lacked the maturity, sensibility and intelligence to be employed by the Defendant; in that the Defendants knew of the lack of ability, experience, deportment and maturity of said Defendant employee when they hired his to be an employee; and, in that the Defendants their agents, servants and employees were otherwise careless, negligent and reckless.

9

63)     That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting

injuries to mind and body therefrom, were cause wholly and solely by reason of the negligence

of the Defendants, their agents, servants, and employees without any negligence on the part of

Plaintiff.

64)     That the acts of the Defendants, their agents, servants and employees in failing to

properly discipline, hire and train their employees, agents and servants presents a clear and

present danger to the citizens of the City and State of New York.

65)     That by reason of the aforesaid, the Plaintiff was injured in mind and body, still

suffers and upon information and belief, will continue to suffer great mental pain, and he was

rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants

and employees.

66) Plaintiff has been damaged in an amount that exceeds the jurisdiction of the courts.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALFOF PLAINTIFF JAAPHAR- ABDUL-HAMID
## NEGLIGENCE IN TRAINING AND SUPERVISING:

67)     The Plaintiff, ,**JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference

each and every preceding paragraph 1-68 of this Complaint as though fully plead and re-alleged

in their entirety below.

68) That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID**

(Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street

and East 17th Street in Manhattan.

69)     Plaintiff switched his off duty light to on because he was headed to the garage in

Brooklyn for an oil change after he dropped off his current passenger.

10

70)     When Plaintiff arrived to the customer's destination; E17th Street and 5ᵗʰ Ave, and was preparing to stop, two intoxicated women started to run toward his car.

71)     While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

72)     Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5ᵗʰ Avenue and 17ᵗʰ Street, and taking pictures of that cab.

73)     As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

74)     The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before   the receipt was printed.

75)     Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

76)     The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

77)     Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

78)     The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom". As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became

11

more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

79)      Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

80) Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

81)      Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

82) They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

83)      They eventually were able to hit the phone causing it to fall down from his hand.

84)   After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

85) Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

86)      While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

87) She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

88)     After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

89)     So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

90)     Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

91)     Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

92) The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

93) Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

13

94)      Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "*__If you insist I will lock you up!__*", and he walked away.

95)      Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

96) The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

97)      Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

98) He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

99)      He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

100)      The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

101)      Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

14

102)        Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

103)        But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

104)        Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

105)        The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

106)        The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

107)        Plaintiff told the Police Officer, "That this was not true".

108)        The Police Officer responded, "shut up, you will go to jail, ok"!

109)        They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

110)        When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring

to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

111)        Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

112)        Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

113)        Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

114)        On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

115)        That the Defendants, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees.

116)        That Defendant, their agents, servants and employees in their failure to hire, train, supervise and discipline or in any other way control the Defendants in their exercise of their functions to enforce the law of the state and **CITY OF NEW YORK**, did act willfully, wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, the Plaintiff.

117)        That the Defendant, **THE CITY OF NEW YORK,** was careless and reckless in hiring and retaining as and for its employees, the above named individuals

16

**DEFENDANTS** Police Officers **JOHN/JANE DOES 1-10,** in that the said Defendants lacked the experience deportment and ability to be employed by the Defendant; in that the Defendant failed to exercise due care and caution in its hiring practices, and in particular, in hiring the Defendant employee who lacked the mental capacity and the ability to function as an employee of the aforementioned Defendant; in that Defendant's background and in that they hired and retained as an employee of their police department individuals whose backgrounds contained information (based information and belief) that revealed said Defendants lacked the maturity, sensibility and intelligence to be employed by the Defendant; in that the Defendants knew of the lack of ability, experience, deportment and maturity of said Defendant employee when they hired his to be an employee; and, in that the Defendants their agents, servants and employees were otherwise careless, negligent and reckless.

118)        That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting injuries to mind and body therefrom, were cause wholly and solely by reason of the negligence of the Defendants, their agents, servants, and employees without any negligence on the part of Plaintiff.

119)        That the acts of the Defendants, their agents, servants and employees in failing to properly discipline, hire and train their employees, agents and servants presents a clear and present danger to the citizens of the City and State of New York.

120)        That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants and employees. Plaintiff recently has all of his criminal dismissed on November 29th 2011.

121)         That the Defendant, **THE CITY OF NEW YORK,** their agents, servants, and employees, carelessly and recklessly failed to properly train and supervise their employees, in particular, the employees named Defendants Police officers **JOHN/JANE DOES 1-10** in that they failed to train their employees to control their tempers and exercise the proper deportment and temperament; and to otherwise act as reasonable, prudent police officers; failed to give them proper instruction as to their deportment, behavior, and conduct as representatives of their employers; and, in that the Defendants, their agents, servants and employees were otherwise reckless, careless and negligent.

122)         That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting injuries to mind and body there from were caused wholly and solely by reason of the negligence of the Defendant, its agents, servants and employees without any negligence on the part of the Plaintiff.

123)         That by reason of the aforesaid, the Plaintiff was injured in Mind and Body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered emotionally and mentally distressed and so remains.

124)     Plaintiff has been damaged in an amount that exceeds the jurisdiction of the courts.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID NEGLIGENCE IN PERFORMANCE OF DUTIES:

125)         The Plaintiff, ,**JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-126 of this Summons and Complaint as though fully plead and re-alleged in their entirety below.

18

126)     That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street and East 17th Street in Manhattan.

127)     Plaintiff switched his off duty light to on because he was headed to the garage in Brooklyn for an oil change after he dropped off his current passenger.

128)     When Plaintiff arrived to the customer's destination; E17th Street and 5th Ave, and was preparing to stop, two intoxicated women started to run toward his car.

129)     While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

130)     Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

131)     As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

132)     The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before  the receipt was printed.

133)     Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

134)        The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

135)        Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

136)        The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom". As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

137)        Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

138)        Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

139)        Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

140)        They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

141)          They eventually were able to hit the phone causing it to fall down from his hand.

142)          After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

143)          Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

144)          While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

145)          She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

146)          After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

147)          So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

148)          Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

21

149)      Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

150)      The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

151)      Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

152)      Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "*If you insist I will lock you up!*", and he walked away.

153)      Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

154)      The one to the passenger side opened the passenger side door and took the handbag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

155)      Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

156)      He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

157)        He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

158)        The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

159)        Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

160)        Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

161)        But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

162)        Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

163)        The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

164)        The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

165)        Plaintiff  told the Police Officer, "That this was not true".

166)        The Police Officer responded, "shut up, you will go to jail, ok"!

167)     They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

168)     When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

169)     Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

170)     Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

171)     Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

172)     On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

173)     That the Defendants, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees.

174)     That Defendant, their agents, servants and employees in their failure to hire, train, supervise and discipline or in any other way control the Defendants in their exercise of their functions to enforce the law of the state and **CITY OF NEW YORK**, did act willfully,

24

wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, the Plaintiff.

175)        That the Defendant, **THE CITY OF NEW YORK,**  was careless and reckless in hiring and retaining as and for its employees, the above named individuals **DEFENDANTS** Police Officers **JOHN/JANE DOES 1-10,** in that the said Defendants lacked the experience deportment and ability to be employed by the Defendant; in that the Defendant failed to exercise due care and caution in its hiring practices, and in particular, in hiring the Defendant employee who lacked the mental capacity and the ability to function as an employee of the aforementioned Defendant; in that Defendant's background and in that they hired and retained as an employee of their police department individuals whose backgrounds contained information (based information and belief) that revealed said Defendants lacked the maturity, sensibility and intelligence to be employed by the Defendant; in that the Defendants knew of the lack of ability, experience, deportment and maturity of said Defendant employee when they hired his to be an employee; and, in that the Defendants their agents, servants and employees were otherwise careless, negligent and reckless.

176)        That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting injuries to mind and body therefrom, were cause wholly and solely by reason of the negligence of the Defendants, their agents, servants, and employees without any negligence on the part of Plaintiff.

177)        That the acts of the Defendants, their agents, servants and employees in failing to properly discipline, hire and train their employees, agents and servants presents a clear and present danger to the citizens of the City and State of New York.

178)        That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants and employees. Plaintiff recently has all of his criminal dismissed on November 29th 2011.

179)        On June 29th, 2012 all charges were dismissed against Plaintiff.

180)        That the Defendants, its agents, servants and employees negligently, carelessly and recklessly performed their police duties in that they failed to use such care in the performance of their duties as a reasonably prudent and careful police officer would have used under similar circumstances; in that they carelessly, recklessly and negligently arrested the Plaintiff without making a proper investigation; in that they were negligent, careless and reckless in the manner in which they operated, controlled and maintained their agents, servants, and employees; and in that the Defendants, their agents, employees and servants were otherwise negligent, careless, and reckless.

181)        That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting injuries to mind and body these from, were caused wholly and solely by reason of the negligence of the Defendant, its agents, servants and employees without any negligence on the part of the Plaintiff.

182)        That by reason of the aforesaid, the Plaintiff was injured in Mind and Body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered emotionally and mentally distressed and so remains.

183)        Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of the Court.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID
## FOR MALICIOUS PROSECUTION:

184)    The Plaintiff, **JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-185 of this Summons and Complaint as though fully plead and re-alleged in their entirety below.

185)    That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between E 6th Street and E 17th Street.

186)    That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street and East 17th Street in Manhattan.

187)    Plaintiff switched his off duty light to on because he was headed to the garage in Brooklyn for an oil change after he dropped off his current passenger.

188)    When Plaintiff arrived to the customer's destination; E17th Street and 5th Ave, and was preparing to stop, two intoxicated women started to run toward his car.

189)    While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

190)    Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

191)    As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right

side of the car and tried to jump into the car while the passenger was still making payment with credit card.

192)        The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before   the receipt was printed.

193)        Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

194)        The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

195)        Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

196)        The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom".  As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

197)        Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

198)   Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

199)        Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

200)      They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

201)        They eventually were able to hit the phone causing it to fall down from his hand.

202)      After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

203)      Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

204)        While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

205)      She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

206)        After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

207)        So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

208)        Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

209)        Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

210)    The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

211)    Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

212)        Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "*__If you insist I will lock you up!__*", and he walked away.

213)        Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

214)      The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

215)      Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

216)      He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

217)      He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

218)      The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

219)      Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

220)      Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

221)      But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

222)      Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

223)      The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers

31

asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

224)       The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

225)       Plaintiff told the Police Officer, "That this was not true".

226)       The Police Officer responded, "shut up, you will go to jail, ok"!

227)       They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

228)       When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

229)       Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

230)       Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

231)       Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

32

232)         On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

233)         That the Defendants, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees.

234)         That the aforesaid occurrence, to wit: malicious prosecution, false arrest and imprisonment, resulting injuries to mind and body therefrom, were cause wholly and solely by reason of the negligence of the Defendants, their agents, servants, and employees without any negligence on the part of Plaintiff.

235)         That the acts of the Defendants, their agents, servants and employees in failing to properly discipline, hire and train their employees, agents and servants presents a clear and present danger to the citizens of the City and State of New York.

236)         That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants and employees.

237)    Plaintiff was forced to attend many Court appearance for a crime the police knew the Plaintiff did not commit.

238)    After Plaintiff was falsely arrested, he was forced to stay in the Precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

239)    Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012.

33

240)      After multiple Court appearance, on June 29th, 2012 all charges were dismissed against Plaintiff.

241)      That by reason of the aforesaid unlawful and malicious prosecution and criminal charges and hearings, the Plaintiff was deprived of his liberty was subjected to great indignity, pain, humiliation, and great distress of mind and body and was help up to scorn and ridicule, was injured in character and reputation, was prevented from attending his usual business and avocation, was injured in his reputation in the community and the said Plaintiff has been otherwise damaged.

242)      Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of the Courts.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:

243)      The Plaintiff, **JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-244 of this Complaint as though fully plead and re-alleged in their entirety below.

244)      That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street and East 17th Street in Manhattan.

245)      Plaintiff switched his off duty light to on because he was headed to the garage in Brooklyn for an oil change after he dropped off his current passenger.

246)      When Plaintiff arrived to the customer's destination; E17th Street and 5th Ave, and was preparing to stop, two intoxicated women started to run toward his car.

34

247)        While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

248)        Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

249)        As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

250)        The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before  the receipt was printed.

251)        Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

252)        The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

253)        Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

254)        The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom". As Plaintiff was trying to convince them to get out of the car, the highly drunken

woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

255)     Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

256)     Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

257)     Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

258)     They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

259)     They eventually were able to hit the phone causing it to fall down from his hand.

260)     After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

261)     Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

262)        While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

263)        She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

264)        After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

265)        So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

266)        Plaintiff responded by saying,  "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

267)        Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

268)        The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

269)     Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

270)     Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "*__If you insist I will lock you up!__*", and he walked away.

271)     Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

272)     The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

273)     Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

274)     He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

275)     He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

276)     The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

277)     Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

38

278)        Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

279)        But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

280)        Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

281)        The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

282)        The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

283)        Plaintiff told the Police Officer, "That this was not true".

284)        The Police Officer responded, "shut up, you will go to jail, ok"!

285)        They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

286)        When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring

to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

287)        Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

288)        Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

289)        Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

290)        On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

291)        That the action of the Defendants in arresting the Plaintiff under the circumstance herein where the Police knew or should have known was on false pretenses because the woman who falsely accused Plaintiff had thrown his car key into the sewer and did not disavow this wrongful act, had Plaintiff's cell phone in her hand bag which she forcibly removed from Plaintiff, had not paid the fare, and arrested Plaintiff solely upon the basis of being a black male is conduct that is so repugnant to our society that it went beyond the bounds of decency that should be tolerated in our society and it shocks the conscious of all reasonable people everywhere.

292)        That because of the outrageous conduct of the police, the Plaintiff has suffered permanent emotional upset.

293)        On June 29th, 2012 all charges were dismissed against Plaintiff.

294)     That the action of the Defendants in arresting the Plaintiff under the circumstance herein where the Police knew or should have known was on false pretenses because the woman who accused Plaintiff had thrown his car key into the sewer and did not disavow this claim, had Plaintiff's cell phone in her hand bag which she forcibly removed from Plaintiff, had not paid the fare, and arrested Plaintiff solely upon the basis of being a black male is conduct that is so repugnant to our society that it went beyond the bounds of decency that should be tolerated in our society and it shocks the conscious of all reasonable people everywhere.

295)     Plaintiff has suffered severe emotional disturbance as a result of the wrongs committed against him by the police.

296)     That due to defendants' conduct, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered emotionally and mentally distressed and so remains.

297)     Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of the Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

298)     The Plaintiff, **JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-299 of this Complaint as though fully plead and re-alleged in their entirety below.

299)     That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between E 6th Street and E 17th Street.

41

300)            Plaintiff switched his off duty light to on because he was headed to the garage in Brooklyn for an oil change after he dropped off his current passenger.

301)            When Plaintiff arrived to the customer's destination; E17th Street and 5th Ave, and was preparing to stop, two intoxicated women started to run toward his car.

302)            While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

303)            Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

304)            As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

305)            The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before  the receipt was printed.

306)            Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

307)            The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

308)            Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

42

309) The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom". As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

310) Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

311) Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

312) Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

313) They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

314) They eventually were able to hit the phone causing it to fall down from his hand.

315) After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

316)     Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

317)          While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

318)     She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

319)          After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

320)     So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

321)     Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

322)          Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

323)     The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the

44

woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

324)     Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

325)     Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "***If you insist I will lock you up!***", and he walked away.

326)     Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

327)     The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

328)     Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

329)     He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

330)     He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

331)     The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

332)     Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

333)     Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

334)     But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

335)     Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

336)     The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

337)     The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

338)     Plaintiff told the Police Officer, "That this was not true".

339)     The Police Officer responded, "shut up, you will go to jail, ok"!

340)     They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

341)     When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took

46

place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

342)        Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

343)        Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

344)        Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

345)        On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

346)        That the action of the Defendants in:  **i**. arresting the Plaintiff under the circumstance herein where the Police knew or should have known was on false pretenses because the woman who accused Plaintiff had thrown his car key into the sewer and **ii**. did not disavow this claim, **iii**. had Plaintiff's cell phone in her hand bag which she forcibly removed from Plaintiff, **iv**. had not paid the fare, and arrested Plaintiff solely upon the basis of being a black male, **v**. caused Plaintiff to attend numerous Court appearances and be maliciously prosecuted, **vi**. Spend a night in jail by this flagrant abuse of the police power because Plaintiff was an uneducated black male shocks the consciousness of the ordinary American and cannot under any circumstance be tolerated.

347)     Plaintiff has suffered severe emotional disturbance as a result of the wrongs committed against him by the police.

348)          That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants and employees. Plaintiff recently has all of his criminal dismissed on November 29th 2011.

349)     Plaintiff has been damaged in an amount of money that exceeds the jurisdictional limits of the Courts.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID
## FOR CIVIL RIGHT ACTION 42 USC §1983:

350)     The Plaintiff, **JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1 through 347 of this Complaint as though fully plead and re-alleged in their entirety below.

### Venue and Jurisdiction

351)     The jurisdiction is founded upon the existence of a Federal Question.

352)     That this is an action to redress the deprivation under color of state and/or federal statue, ordinance, regulation, custom or usage of right, privilege, and immunity secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983, 1981, 1985 (3) and arising under the Federal Constitution, statues and laws as well as the laws and statuses of the State and Constitution of New York.

48

353)     That Jurisdiction is founded upon U.S.C § 1331 and § 1343 (3) and (4), this being

an action authorized by law to redress the deprivation under the color of statue, ordinance,

regulation, custom or usage of a right, privilege, and immunity secured to the Plaintiff by the

First, Fourth, and Fourteenth amendments to the Constitution of the United States (42 USC §

1983, 1981, 1985 (3) and arising under the federal constitutional laws and statues as well as the

laws, statues, and constitution of the State of New York.

354)     The amount in controversy exceeds, exclusive of interest and costs are $75,000,

the jurisdictional limits of this and any other court having jurisdiction.

355)     The Plaintiff did not commit any illegal act, either before or at the time he was

falsely arrested and imprisoned and deprived of his Constitutional rights as set forth in the

Constitution of the United States, particularly 42 USC § §1981, 1983 and the Constitution of the

State of New York.

356)     That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID**

(Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street

and East 17th Street in Manhattan.

357)        Plaintiff switched his off duty light to on because he was headed to the

garage in Brooklyn for an oil change after he dropped off his current passenger.

358)        When Plaintiff arrived to the customer's destination; E17th Street and 5th

Ave, and was preparing to stop, two intoxicated women started to run toward his car.

359)        While one of them was highly drunk/intoxicated and more aggressive, the

other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk

sister from the rudeness, but also helped her to abuse Plaintiff).

360)         Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

361)         As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

362)         The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before  the receipt was printed.

363)         Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

364)         The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

365)         Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

366)         The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom". As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

367)        Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

368)    Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

369)        Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

370)    They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

371)        They eventually were able to hit the phone causing it to fall down from his hand.

372)    After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

373)    Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

374)        While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

375) She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

376) After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

377) So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

378) Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

379) Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

380) The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

381) Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

382)        Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "*__If you insist I will lock you up!__*", and he walked away.

383)        Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

384)    The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

385)        Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

386)    He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

387)        He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

388)        The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

389)    Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

53

390)        Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

391)     But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

392)     Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

393)     The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

394)        The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

395)        Plaintiff  told the Police Officer, "That this was not true".

396)     The Police Officer responded, "shut up, you will go to jail, ok"!

397)        They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

398)     When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring

to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

399)         Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

400)         Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

401)         Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

402)         On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

403)         That the Defendants, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees.

404)         That Defendant, their agents, servants and employees in their failure to hire, train, supervise and discipline or in any other way control the Defendants in their exercise of their functions to enforce the law of the state and **CITY OF NEW YORK**, did act willfully, wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, the Plaintiff.

405)         That the Defendant, **THE CITY OF NEW YORK,** was careless and reckless in hiring and retaining as and for its employees, the above named individuals

55

**DEFENDANTS** Police Officers **JOHN/JANE DOES 1-10,** in that the said Defendants lacked the experience deportment and ability to be employed by the Defendant; in that the Defendant failed to exercise due care and caution in its hiring practices, and in particular, in hiring the Defendant employee who lacked the mental capacity and the ability to function as an employee of the aforementioned Defendant; in that Defendant's background and in that they hired and retained as an employee of their police department individuals whose backgrounds contained information (based information and belief) that revealed said Defendants lacked the maturity, sensibility and intelligence to be employed by the Defendant; in that the Defendants knew of the lack of ability, experience, deportment and maturity of said Defendant employee when they hired his to be an employee; and, in that the Defendants their agents, servants and employees were otherwise careless, negligent and reckless.

406)      That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting injuries to mind and body therefrom, were cause wholly and solely by reason of the negligence of the Defendants, their agents, servants, and employees without any negligence on the part of Plaintiff.

407)      That the acts of the Defendants, their agents, servants and employees in failing to properly discipline, hire and train their employees, agents and servants presents a clear and present danger to the citizens of the City and State of New York.

408)      That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants and employees.

409)     Plaintiff has been damaged in an amount that exceeds the jurisdiction of the courts.

410)     Plaintiff has suffered a violation of his civil rights pursuant to 42 U.S.C.A. § 1983. Further, as police officers employed by Defendant **CITY OF NEW YORK**, said Defendant Police Officers were acting under the color of State law when they violated Plaintiff's rights.

411)     That the aforementioned misuse of authority and power by Defendants Police Officers **JOHN/JANE DOES 1-2** all of which was tolerated and Condoned by the Police Commissioner, Raymond Kelly and Mayor Michael Bloomberg was utterly egregious and shocking to the conscience. As a direct result, Plaintiff was caused to undergo the humiliation and indignities resulting from his unlawful confinement against will; and was caused and will continue to undergo and endure severe mental anguish, humiliation and economic hardship as a consequence thereof.

412)     Such deprivation were in violation of the rights secured to Plaintiff by the First, Fourth, Fourteenth Amendments of the United States constitution and by Title 42 U.S.C.A. § 1983. And the laws, ordinances and statues of the State of New York to wit:

   a.   Defendants' actions in illegally Plaintiff's store without a warrant, conducting a warrantless search of the store and all persons found within the store was pursuant to policies and procedures of the NYPD which condoned these illegal searches. The police fully understood that they had the approval of the Mayor of the Police Commissioner to engage in these improper and illegal searches of the store.

57

b. The Defendants, their agents, servants and employees, wrongfully and falsely arrested, imprisoned and detained the Plaintiff without any right, privilege or grounds.

c. The arrest and imprisonment was not justified by probable cause or other legal privilege; Defendants, their agents, servants and employees, acting under the color of law and under authority of their Office as Police Officers for the city falsely arrested the Plaintiff knowing that the Plaintiff had not violated any part of the New York State Penal Law.

d. That the Defendant, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees

c. That Defendants, their agents, servants and employees is in their failure to enforce the laws of the state of New York did act with reckless disregard to Plaintiff's rights in that they did not exercise that degree of due care which prudent and reasonable individuals would show in executing the duties of the Defendants.

f. That Defendant, their agents, servants and employees in their failure to hire, train, supervise and discipline or in any other way control the Defendants in the exercise of their functions to enforce the law of the state and **CITY OF NEW YORK,** did act willfully, wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the state of New York including Plaintiff.

g. That the acts of the Defendants, their agents, servants and employees relative in failing to properly discipline, hire and train their employees, agents and servants

58

is a presents a clear and present danger to the citizens of the City and State of New York.

413)     As a result of the aforesaid Defendants' deprivation of Plaintiff's civil rights, Plaintiff has been damaged in the sum exceeds the Jurisdictional limits of all lower courts.

414)     The Defendants, their agents, servants and employees, wrongfully and falsely arrested, imprisoned and detained the Plaintiff without any right, privilege or grounds.

415)     The arrest and imprisonment was not justified by probable cause or other legal privilege or grounds. Defendants their agents, servants and employees, acting under the color of law and under authority of their office as Police Officers for the city falsely arrested the Plaintiff knowing that the Plaintiff had not violated any part of the New York State Penal Law.

416)     That by their wanton conduct, Defendants showed a blatant disregard for Plaintiff's Constitutional rights.

417)     That the Plaintiff demands attorney fees should he prevail in his 42 USC Section 1983 claims against the individually named police officers and **CITY OF NEW YORK.**

### AS AND FOR AN EIGHT CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF JAAPHAR- ABDUL-HAMID
### CIVIL RIGHTS ACTION 42 USC §§ 1985(3):

418)     The Plaintiff, **JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-261 of this Complaint as though fully plead and re-alleged in their entirety below.

419)     That the actions of the white police officers in intentionally conspiring amongst themselves in falsely arresting Plaintiff on February 26th, 2012, for crimes they knew he did not commit was racially motivated because Plaintiff, **JAAPHAR ABDUL-HAMID** was a black male and the female passengers where white or white looking Hispanics.

420)        That at all times hereinafter mentioned , the Defendants Police Officers

**JOHN/JANE DOES 1-10** each of them, separately and in concert conspired for the purpose of

depriving, either directly or indirectly, Plaintiff of the equal protection of the laws, or of equal

privileges and immunities under the laws in that said Defendants did engage in the illegal

conduct  hereinbefore described and thus did deprive the Plaintiff of the equal protection of the

laws, or of equal privileges and immunities secured to Plaintiff by the First and Fourteenth

Amendments to the Constitution of the United States and the Laws of the United States. The

unlawful and illegal conduct of the Defendants deprived the Plaintiff of the following rights,

privileges and immunities secured to him by the Constitution of the United States and the State

of New York:

      a.  The right of the Plaintiff to be secure in their persons and effects against

           unreasonable search and seizure under the Fourth and Fourteenth Amendments of

           the Constitution of the United States

      b.  the right of the Plaintiff to be informed of the nature and cause of the accusation

           against him so secured to them under the sixth and fourteenth amendments of the

           Constitution of the United States; and,

      c.  the right of the Plaintiff not to be deprived of life, liberty or property without due

           process of law, and the right to the equal protection of the law secured by the

           Fourteenth Amendment to the Constitution of the United States.

421)        That by reason of the aforesaid violations, false arrest, and false imprisonment,

and battery and otherwise discriminatory treatment in violation of both the United States and

New York State Constitutions, the Defendants conspired together to enter into a nefarious

scheme to wrongfully deprive the Plaintiff and compelled him to abandon his rights and privileges as provided to him in the Constitutional rights as set forth in the Constitution of the State of New York, and laws thereto, the Defendants, violated 42 U.S.C. §§ 1981, 1983, 1985 (3) in that the Defendants acted as persons who under color of any statute, ordinance, regulation, custom or usage of the **CITY OF NEW YORK**, subjected or caused to be subjected, a citizen of the Unite States or other person within the jurisdiction, particularly the Plaintiff thereof to be deprived of his rights, privileges or immunities received by Constitution of the United States of America, and provided them by the Constitution of the State of New York; were subjected to Great indignities and humiliation, and pain and distress of mind and body and was held up to scorn and ridicule, injured in his character and reputation, was prevented from attending his usual business and vocation and was injured in his reputation in the community and the acts aforementioned were committed with the aim of injuring and damaging the Plaintiff.

422)     That by reason of the aforesaid violations, to wit the false arrest, false imprisonment caused by the Defendants, who wrongfully deprived the Plaintiff and compel his abandon his rights and privileges as provided to his in the Constitution of the United States of America, and in the Constitution of the United States of America, and in the Constitution of the State of New York, and laws thereto, the Defendants, acting within the scope of their authority and without any probable cause, caused the Plaintiff great harm because of the aforesaid illegal conduct.

<div align="center">

**AS AND FOR THE NINTH CAUSE OF ACTION**
**ON BEHALF OF JAAPHAR- ABDUL-HAMID**
**FOR ATTORNEY FEES PURUSANT TO 42 USC SECTION 1988:**

</div>

423)    The Plaintiff, **JAAPHAR- ABDUL-HAMID,** hereby incorporates by reference each and every preceding paragraph 1-424 of this Complaint as though fully plead and re-alleged in their entirety below.

424)    Should Plaintiff be victorious he intends to assert a claim for attorney fees on his federal claims pursuant to 42 USC section 1983, 1981, 1985(3) et seq.

<div align="center">

**AS AND FOR THE TENTH CAUSE OF ACTION**
**ON BEHALF OF JAAPHAR- ABDUL-HAMID**
**FOR RACIAL DISCRIMINATION PURUSANT TO 42 USC SECTION 1981:**

</div>

425)    The Plaintiff, **JAAPHAR- ABDUL-HAMID**, hereby incorporates by reference each and every preceding paragraph 1-426 of this Complaint as though fully plead and re-alleged in their entirety below.

426)    That the police in arresting the Plaintiff arrested solely upon the basis of his race being a black male because the facts and circumstances did not call for such an arrest.

427)    It was the Plaintiff who repeatedly called 911 asserting that he was being attacked and abused by his female passengers.

428)    These passengers also threw his car key into the sewer.

429)    What is more, the female passengers also took forcibly took Plaintiff's cell phone and placed it in their handbag.

430)    When the Police arrived, Plaintiff's cell phone was found in this handbag or in the female passengers.

431)    At no time did the police interview the Plaintiff to ascertain his version of the events because he was a black male but chose instead to listen to the white male officers who were biased in favor of the white female women.

432)    Theses facts readily come to light given the facts of this case; to wit:

433)        That on or about February 26th, 2012, Plaintiff, **JAAPHAR ABDUL-HAMID** (Hereinafter "Plaintiff") was picking up a customer from Cooper Square between East 6th Street and East 17th Street in Manhattan.

434)        Plaintiff switched his off duty light to on because he was headed to the garage in Brooklyn for an oil change after he dropped off his current passenger.

435)        When Plaintiff arrived to the customer's destination; E17th Street and 5th Ave, and was preparing to stop, two intoxicated women started to run toward his car.

436)        While one of them was highly drunk/intoxicated and more aggressive, the other one was moderately drunk but wily (she pretended as if she was stopping her highly drunk sister from the rudeness, but also helped her to abuse Plaintiff).

437)        Both girls had juts violently harassed a yellow cab that was standing at the East-North corner of 5th Avenue and 17th Street, and taking pictures of that cab.

438)        As they were approaching Plaintiff's car, Plaintiff signaled to the two women that he was off-duty and they ignored him proceeded to the car opening the rear right side of the car and tried to jump into the car while the passenger was still making payment with credit card.

439)        The customer tried to ask them to wait for her to finish the payment and they yelled at her cursing repeating **"FUCK"** about three times causing her to jump out from the car before   the receipt was printed.

440)        Immediately they jumped into the car, the highly drunk girl laid on the seat and they continued to curse and behave rudely. The highly drunk girl was about to throw up and Plaintiff said to them, "Ma'am, I am sorry I can't take you, so please, exit from my car".

441)          The moderately drunken woman answered by saying: "don't worry, my sister is all-right, she is not drunk, she is just not feeling well".

442)          Plaintiff responded by saying, "ma'am, is she is sick, then I advise you to call 911 for an ambulance, I can do the call for you provided you get out of my car".

443)          The highly drunken woman yelled saying, "No, no, I am not sick, I am fine, I only need the bathroom, so take us to a gas station of Dunkin Donuts so I can use the bathroom". As Plaintiff was trying to convince them to get out of the car, the highly drunken woman became more rude and aggressive and spat on Plaintiff's face through the partition window, and he quickly closed that window and started to call 911 for help.

444)          Then the girls got out of the car leaving the door open. Plaintiff got out and went round the car to close the door, and the highly drunken woman went around, from the other direction, and came and sat at the driver seat and tried to drive the car.

445)     Plaintiff quickly ran to her and opened the driver side door and managed to stop her. In the process, she shut off the ignition and took out the car keys and dropped it into the sewer.

446)          Plaintiff then called 911 for the second time, while shaking out of fear, but the two women wouldn't allow him to speak to the 911 recipient. They were harassing him in an attempt to stop him from making the call. They blocked him from getting back into his car, and struggled with him to take away his phone from him.

447)          They were screaming at Plaintiff saying, "You fucking immigrant, African, go back to your country, go back to Africa, this is not your country," while punching him and trying to grab the phone.

448)        They eventually were able to hit the phone causing it to fall down from his hand.

449)        After the phone fell, the moderately drunken girl quickly took it and put it in her hand-bag that she was holding, and tried to run away.

450)        Plaintiff managed to grab the hand-bag from her and quickly ran into his car, locking himself in.

451)        While sitting in the car, Plaintiff called 911 twice again (the third and fourth time), and the girls kept banging on the car, and the highly aggressive one was looking for every possible way to cause damage to the car or to break the glass.

452)        She took out her high heeled boot and used its metal heel to hit the glass more than 15 times while Plaintiff was inside the car all the while asking the 911 operator for help.

453)        After some time, three or four NYPD cars arrived but stopped next to the yellow cab that was there and the girls ran to the police Officers and were talking to them there for more than four minutes while Plaintiff was sitting in his car waiting for the officers to come to him and, at least, ask him about what happened; but none of the officers came to him to ask him anything.

454)        So, Plaintiff decided to get out of the car and walk to the police officers and tell them what happened. When the officers saw him walking towards them, one of them walked toward hi angrily and started to yell and scream at him saying, " Don't talk to him, don't tell him anything, just do what I ask you to do, Ok, Ok"!

455)        Plaintiff responded by saying, "Please Officer, one of the women have my car key, so please get the key from them so that I can pull over the car". The office was surprised and replied, "What! Are you serious"?

65

456)     Plaintiff repeated, "one of the women have my car keys, so please get the key so that I can pull over the car".

457)     The officer then walked back to the rest of the officers, and Plaintiff saw them talk with the driver of the driver of the other yellow cab who apparently was telling them that the woman had put the car key into the sewer, and therefore suggested that if the sewer could be open for the key to be taken out.

458)     Plaintiff overheard the female police officer say, "But this is a sewer with water in it, by now the key might have already gone or floated away".

459)     Then, as Plaintiff was waiting by the car, for the police officers, one sergeant among them came to him and said: "well, the one of the women has put your car key into sewer, so if you have another key just use it and go, or call your company to come and tow the car," He added that, "*If you insist I will lock you up!*", and he walked away.

460)     Without saying anything, Plaintiff walked back into the car and tried to call his garage, and then two officers came to him; one of them to the driver side and the other one to the passenger side.

461)     The one to the passenger side opened the passenger side door and took the hand-bag and gave it to the woman. The police officer on the driver side said to him: "you come out"! Plaintiff exited the car with phone in his hand, and the Police Officer ordered Plaintiff to hand over his phone, He then asked Plaintiff, "Whose phone is this"? Plaintiff answered, "Mine".

462)     Then he said to Plaintiff: "what proof do you have that shows the phone is yours?" Plaintiff replied, "Everything shows it is my phone".

463)     He took off the cover of the phone to see the color of the phone and then he asked him to mention any contact that he called that night, and he did.

464)         He tried to check but could not because it needed a password, and in the end, he asked Plaintiff for the password for the phone and he told him.

465)         The police after verifying and believing Plaintiff that the phone belonged to him, gave it back to him, and he went back over to the women.

466)         Then after a few moments, the officers came to him and asked him if he had one of the woman's phone.

467)         Plaintiff answered, "No, I did not take their phone; all I was having from them was the hand-bag, in which they put my phone in and they tried to go away with it, and it has been giving back to them already by one of you".

468)         But the officers did not believe Plaintiff and kept screaming at him to bring the girls' phone (as if they had seen him steal the girl's phone).

469)         Plaintiff asked them to search him if they didn't believe him, which they did and never found the girls' phone on him because he had not taken their phone.

470)         The Plaintiff asked them to check the car, probably she might have dropped it in the car, and together with them they tried to find to look for the phone, and one of the officers asked him to step aside, which he did, and they searched from the back of the car, and one of the girls use another phone to call the phone and it was found at the driver's side of the car. Which the girl might have dropped it there when she tried to drive the car and when she took out the car key.

471)         The sergeant said:, "You, I got you! You stole your passenger's phone, right? You are under arrest, for possession of stolen property".

472)         Plaintiff  told the Police Officer, "That this was not true".

473)         The Police Officer responded, "shut up, you will go to jail, ok"!

474)     They handcuffed him and placed him into their car and drove him to the 13th Precinct (on 21st Street between 2nd and 3rd Avenues, Manhattan).

475)     When an officer at the precinct tried to ask him to tell him what happened, one of the police officers, who came to the scene, did not allow him to answer or tell what actually took place; she quickly replied: "Oh it is just for a stupid miscommunication between him (referring to plaintiff) and his costumers about payment of the taxi fare, and he took away the costumer's phone".

476)     Plaintiff asked for permission to say what happened, but the arresting officer, who was writing down his own false version of the incident, told him that he had no right to talk, and that he could only talk to the court.

477)     Plaintiff stayed in the precinct from 3:30 AM to 7:40 AM, and then he was transported to Central Booking when he was put in a cell from approximately 9:20 AM until 8:30 PM.

478)     Plaintiff was released on February 27th, 2012 with a return date of April 15th, 2012

479)     On June 29th, 2012, after making several court appearance on trumped up charges the police knew were false, the entire case was dismissed against Plaintiff.

480)     That the Defendants, their agents, servants and employees failed to adequately and properly hire, retain, supervise, discipline or in any other way control the behavior and performance of the Defendants, their agents, servants and employees.

481)     That Defendant, their agents, servants and employees in their failure to hire, train, supervise and discipline or in any other way control the Defendants in their exercise of their functions to enforce the law of the state and **CITY OF NEW YORK**, did act willfully,

wantonly, maliciously and with such reckless disregard for the consequences as to display a conscious disregard for the dangers of harm and injury to the citizens of the State of New York including, in this instance, the Plaintiff.

482)         That the Defendant, **THE CITY OF NEW YORK,** was careless and reckless in hiring and retaining as and for its employees, the above named individuals **DEFENDANTS** Police Officers **JOHN/JANE DOES 1-10,** in that the said Defendants lacked the experience deportment and ability to be employed by the Defendant; in that the Defendant failed to exercise due care and caution in its hiring practices, and in particular, in hiring the Defendant employee who lacked the mental capacity and the ability to function as an employee of the aforementioned Defendant; in that Defendant's background and in that they hired and retained as an employee of their police department individuals whose backgrounds contained information (based information and belief) that revealed said Defendants lacked the maturity, sensibility and intelligence to be employed by the Defendant; in that the Defendants knew of the lack of ability, experience, deportment and maturity of said Defendant employee when they hired his to be an employee; and, in that the Defendants their agents, servants and employees were otherwise careless, negligent and reckless.

483)         That the aforesaid occurrence, to wit: the false arrest and imprisonment, resulting injuries to mind and body therefrom, were cause wholly and solely by reason of the negligence of the Defendants, their agents, servants, and employees without any negligence on the part of Plaintiff.

484)         That the acts of the Defendants, their agents, servants and employees in failing to properly discipline, hire and train their employees, agents and servants presents a clear and present danger to the citizens of the City and State of New York.

485)        That by reason of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, and he was rendered sick, sore, lame and so remains by the actions of the Defendants, their agents, servants and employees.

486)    Plaintiff has been damaged in an amount that exceeds the jurisdiction of the courts.

**487)**    On June 29th, 2012 all charges were dismissed against Plaintiff.

**CONCLUSION**

488)    **WHEREFORE** that by reason of the aforesaid violations, the Plaintiff requests the following relief:

   a. Compensatory damages in the sum which exceeds the jurisdictional limits of all lower courts on all causes of action.

   b. Punitive damages in the sum which exceeds the jurisdictional limits of all lower courts on all causes of action except negligence and against the City.

   c. An award of reasonable attorney's feed, costs and disbursements;

   d. Plaintiff requests a trial by jury of all issues involved in this complaint;

   e. Such other and further relief as this Court may deem just, meet and proper under the circumstances.

Dated: January ___, 2013
            New York, NY 10007

_Ronald Paul Hart_
            Ronald Paul Hart, Esq,
            225 Broadway, Suite 2515
            New York, NY 10007
            Tel: (212) 766-1443

# VERIFICATION

STATE OF NEW JERSEY  )
　　　　　　　　　　　　) ss.:
COUNTY OF HUDSON  )


Jaapher Abdul-Hamed, being duly sworn, hereby deposes and says, that:

1.　　I am the Plaintiff in this action.

2.　　I am over eighteen years of age and reside in New York.

3.　　I verify that the statements to my attorney are true to the best of my knowledge and belief.

4.　　All allegations made which are based upon information and belief are made after consultation with my attorney and on the basis of the information available to me at this time.

5.　　I further verify that I have read the foregoing Summons and Complaint and that I know the contents thereof; the same are true to my knowledge, except to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　JAAPHER ABDUL-HAMED

Sworn to before me this
31st Day of December 2012

_____
Notary Public

FAROOQ BHATTI
Notary Public, State of New Jersey
Commission No. 2406759
Commission Expires March 30, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAAPHAR- ABDUL-HAMID

Plaintiff,

-against-

THE CITY OF NEW YORK,
AND POLICE OFFICER JOHN AND/OR
JANE DOE NUMBERS 1-10

Defendants.

Index No:
Complaint

RONALD PAUL HART, ESQ.
Attorney(s) for the PLAINTIFF
225 Broadway Suite 2515
New York, New York 10007
Tel. (212)766-1443

To: ALL COUNSEL
Attorney(s) for
THE DEFENDANTS:

Service of a copy of the within AMENDED SUMMONS AND COMPLAINT

_____

Attorney(s) for THE PLAINITFFS

Counselor(s): Please Take notice

*NOTICE OF ENTRY*
that the within is a (certified) true copy of a
duly entered order in the office of the clerk of the within named court on

*NOTICE OF SETTLEMENT*
that an order for of which the within is a true copy will be presented for settlement to the
HON. one of the justices of the within named Court at the within is a (certified) true copy of
a duly entered

71